UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Charles William Bowen,           Case No. 12-31699-KLP
        Debtor.                         Chapter 7


Tiffany D. Smith,
        Plaintiff,

v.                                      Adv. Pro. 14-03041-KLP

Charles William Bowen,
        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the complaint filed by Plaintiff Tiffany D. Smith seeking to deny the Chapter 7 discharge of Defendant Debtor Charles William Bowen (the "Debtor"), pursuant to 11 U.S.C. § 727(a)(2). Ms. Smith, an unsecured judgment creditor, alleges that in the year prior to his bankruptcy filing the Debtor transferred real property with the intent to hinder, delay or defraud her. The Debtor does not dispute that he sold real property approximately eight months before his bankruptcy filing but denies that he did so with the intent to hinder, delay or defraud Ms. Smith.

A trial on the complaint was conducted on October 20, 2014, at which time this Court received testimony and exhibits and heard the argument of counsel. At the conclusion of the trial, Court took the matter under

advisement. The Court's findings of fact and conclusions of law are set forth below.

## JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## FACTS

The facts are largely uncontroverted. On March 3, 2010, Ms. Smith filed a lawsuit against the Debtor in the Circuit Court of the County of Louisa, Virginia (the "State Court Lawsuit"). On March 17, 2011, the Debtor's then wife, Melissa Bowen, was added as a defendant. The basis for the State Court Lawsuit was a personal injury suffered by Ms. Smith as a result of a boating accident. A trial in the State Court Lawsuit was held on September 14 and 15, 2011, and at the conclusion of the trial the jury returned a verdict in favor of Ms. Smith against the Debtor and Melissa Bowen, jointly and severally. On November 30, 2011, the Louisa County Circuit Court entered an order granting judgment against the Debtor and Melissa Bowen in the amount of $700,000. No payment has ever been made by the Debtor or Melissa Bowen to Ms. Smith in connection with her claim.

Prior to the trial in the State Court Lawsuit, the Debtor and Melissa Bowen, by deed dated July 18, 2011, and recorded on July 27, 2011, in the Office of the Clerk of the Spotsylvania Circuit Court, transferred two parcels

2

of unimproved, jointly owned real property to Eileen Bowen, the Debtor's sister. The parcels transferred were a five-acre parcel in Orange, Virginia, and a two-acre parcel in Spotsylvania, Virginia (collectively, the "Property). The total purchase price for the Property was $41,750.00.[1] According to appraisals dated June 23, 2012, on the date of the appraisals, the "six month liquidation value" of the five-acre parcel ranged from $52,500 to $59,900, and the "six month liquidation value" of the two-acre parcel ranged from $29,900 to $37,300. Additional reports, prepared on March 19, 2013, appraised the values of the two parcels as of July 18, 2011, at $42,000 for the five-acre parcel and $28,000 for the two-acre parcel. One of the reports described the real estate market in July of 2011 as a buyers' market.

The two-acre parcel had been listed by the Debtor with a realtor off and on for years with no offers. According to the realtor employed by the Debtor, "nothing was selling." The five-acre parcel was in a neighborhood where market conditions were so bad that a vacant lot in the neighborhood had not sold since 2010.

Eileen Bowen, the Debtor's sister, offered to purchase the Property from the Debtor because she knew that he had been unable to find a buyer and needed funds to pay bills. The price she paid the Debtor was based on the maximum amount she was able to obtain from her 401(k) retirement plan. At the suggestion of Eileen Bowen, the Debtor retained a right of first

---

[1] The parties stipulated that the total purchase price was $41,740, but all other evidence is that the total purchase price was $41,750.

refusal in the event she subsequently elected to sell the Property. The Debtor neither sought to repurchase the Property nor exercised any control over the Property after the sale.[2]

The Debtor received $6005.57 in net proceeds from the sale of the Property to his sister.[3] Melissa Bowen, who was estranged from the Debtor at the time of the sale, joined in the conveyance but did not receive any of the net proceeds.[4] The Debtor utilized the net proceeds to pay bills, including attorney's fees.

Before the jury verdict was rendered in September of 2011, the Debtor had not considered filing bankruptcy. However, the expense of defending the State Court Lawsuit, along with the additional financial stress associated with his separation from Melissa Bowen, caused the Debtor to seek a means to generate funds and reduce his expenses. Selling the Property not only generated some proceeds for the Debtor's use, it relieved him of the financial burdens associated with owning the Property.

The Debtor filed his bankruptcy petition on March 17, 2012, approximately three and one-half months after the November 30, 2011, final judgment was entered against him in the State Court Lawsuit. In his

---

[2] In August of 2014, the two-acre parcel was sold to an unrelated party for $18,700.00.
[3] At closing, the gross proceeds from the sale were used to pay off two mortgages on the Property in the combined amount of $33,230.11 and settlement charges of $2460.08 (including delinquent real estate taxes and an $835.00 commission to his realtor).
[4] The Debtor and Melissa Bowen separated on September 9, 2010. Their final decree of divorce was entered on May 21, 2012.

4

Statement of Financial Affairs, the Debtor disclosed the July 18, 2011, transfer of the Property to Eileen Bowan (sic).

## CONCLUSIONS OF LAW

Section 727(a)(2)(A) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge unless "the debtor, with intent to hinder, delay or defraud a creditor" has transferred property of the debtor within one year before the bankruptcy filing. 11 U.S.C. § 727(a)(2)(A). Ms. Smith, a judgment creditor, contends that the Debtor's conveyance of the Property to Eileen Bowen, his sister, approximately eight months prior to his bankruptcy filing was made with the intent to hinder, delay or defraud her and that the Debtor should therefore be denied a discharge. The Debtor maintains that he had no intent to hinder, delay or defraud Ms. Smith and that he sold the Property in good faith and for fair consideration.

**Burden of Proof**. Under Rule 4005 of the Federal Rules of Bankruptcy Procedure, the plaintiff has the burden of proof on a complaint objecting to a discharge. The burden may shift to the debtor to provide a satisfactory explanation once the creditor has established a *prima facie* case; however, the ultimate burden rests with the creditor. *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994).

The standard of proof in a discharge action is the preponderance of the evidence. *Id*. Thus, in order to succeed in her complaint to deny the Debtor's discharge under § 727(a)(2), Ms. Smith must establish by a preponderance of

5

the evidence that the Debtor transferred the Property within one year of the bankruptcy filing with the intent to hinder, delay or defraud creditors.[5]

**Badges of Fraud**.  Because direct evidence of fraudulent intent is seldom available, Courts have relied on certain indicia, or "badges of fraud" to determine whether a transfer was made with fraudulent intent. *Zanderman, Inc. v. Sandoval (In re Sandoval)*, 153 F.3d 722, at *2 (4th Cir. 1998) (unpublished):

> Direct evidence of fraudulent intent is rare. Therefore, the court can rely on certain indicia of fraud to determine whether a transfer was fraudulently conducted under Section 727. For example, (1) if there is a lack of consideration for the transfer, (2) if there is a family relationship between the parties, (3) if there is some retention of the property for personal use, (4) if the financial condition of the debtor before and after the transfer is suspicious, (5) if there is an existence of a pattern or series of transactions after the onset of the financial difficulties or pendency of threat of suit by creditors, or (6) if there is a suspicious chronology of events and transfers. The presence of just one of the above listed factors can warrant a court's conclusion that a transfer was fraudulently made, and, certainly, the presence of several factors "can lead inescapably to the conclusion that the debtor possessed the requisite intent."

*Id.* (internal citations omitted).  This Court has identified these badges as follows:

> (1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer.

---

[5] The Debtor does not dispute that the transfer was made within one year of the filing of his bankruptcy petition.

*Tavenner v. Smoot (In re Smoot)*, 265 B.R. 128, 142 (Bankr. E.D. Va. 1999), *aff'd* 257 F.3d 401 (4th Cir. 2001) (citing *Riggs Nat'l Bank v. Andrews (In re Andrews)*, 186 B.R. 219, 222 (Bankr. E.D. Va. 1995)). *See also Huennekens v. The Gilcom Corp. of Va. (In re Sunsport, Inc.)*, 260 B.R. 88, 111 (Bankr. E.D. Va. 2000), *aff'd sub nom. Huennekens v. Reczek*, 43 Fed. Appx. 562 (4th Cir. 2002).[6] Here, the existence of two of the badges, a familial relationship between the Debtor and the transferee and the pendency of litigation at the time of the transfer, is uncontroverted.

*Reservation of interest in the Property.* Ms. Smith maintains that the Debtor's reservation of a right of first refusal in the event Eileen Bowen were to subsequently sell the Property represents a retention of an interest in the Property and is thus another badge of fraud, as set forth in *Sandoval,* 153 F.3d 722, at *2 ("some retention of the property for personal use").[7] There is no evidence that the Debtor retained an interest in the Property for his personal use or that he controlled or otherwise exercised dominion over the Property after its transfer. His right of first refusal was at the suggestion of the transferee, and there is no evidence that the Debtor received any benefit from its inclusion in the transfer. Accordingly, Ms. Smith has not established that this factor or badge of fraud exists in this case.

---

[6] Although *Huennekens v. The Gilcom Corp. of Va. (In re Sunsport, Inc.)*, 260 B.R. 88, 111 (Bankr. E.D. Va. 2000), *aff'd sub nom. Huennekens v. Reczek*, 43 Fed. Appx. 562 (4th Cir. 2002), was a § 548 fraudulent conveyance action, the court's discussion of the badges of fraud is nonetheless pertinent in the § 727 context.

[7] *See also In re Sunsport*, 260 B.R. at 111 (listing "[r]etention of an interest in the transferred property by the transferor" as a badge of fraud); *In re Smoot*, 265 B.R. at 142 (listing "[r]eservation of benefits, control, or dominion by the debtor" as a factor evidencing actual fraud).

7

*Lack of consideration*. Ms. Smith also contends that she has made a showing that there was a lack of consideration for the sale of the Property, another *Sandoval* badge of fraud. *Id.* ("a lack of consideration for the transfer").[8] She asserts that the appraisals of the Property dated June 23, 2012, and March 19, 2013, which assign values substantially higher than the consideration paid by Eileen Bowen, warrant a finding that the Debtor received inadequate consideration. Taken alone, the disparity between the $41,500 transfer price and the appraisals submitted by Ms. Smith might constitute a badge of fraud. However, the evidence at trial as to the condition of the real estate market at the time of the transfer of the Property, coupled with evidence of the Debtor's unsuccessful attempts to market the Property, negates such a conclusion.[9] The Court finds that Ms. Smith has not established a lack of consideration for the transfer of the Property for purposes of establishing her *prima facie* case.

*Insolvency*. Though not alleged in the Complaint, Ms. Smith argues that a fifth badge of fraud, relating to the Debtor's financial condition at the

---

[8]　The relevant *Sunsport* badge of fraud is "[l]ack of or gross inadequacy of consideration for the conveyance," 260 B.R. at 111, and the relevant *Smoot* factor evidencing actual fraud is "[l]ack of consideration for the conveyance." 265 B.R. at 128.

[9]　Ms. Smith also offered exhibits indicating that the Spotsylvania County tax assessments listed 2011 values of $139,900.00 for the five-acre parcel and $56,700.00 for the two-acre parcel, which she contends further support a finding of inadequate consideration for the transfer. A significant discrepancy between the consideration paid to the Debtor and the assessed value of the Property, as exists in this case, would ordinarily constitute sufficient justification to support an inference of fraudulent intent, particularly when the transferee is the Debtor's sister. However, the Court finds that these assessments have no probative value due to the lack of any evidence concerning the methodology and inspection dates for the assessments or an explanation for the significant discrepancies between the tax assessments and the values set forth in the appraisals submitted by Ms. Smith.

8

time of the transfer of the Property, is present. This contention is based solely on the Debtor's having acknowledged, in response to a single question on the subject asked during cross examination, that he was insolvent at the time of the transfer of the Property. The plaintiff established no foundation before seeking the acknowledgement nor was any other evidence offered concerning the Debtor's solvency. The Court is not convinced that the Debtor, a tool salesman, understood the legal definition of insolvency and the implication of his response. Consequently, in the absence of any corroborative evidence whatsoever, the Court finds that Ms. Smith has not proven that the Debtor was insolvent either immediately before or as a result of the transfer of the Property.

**Debtor's defense**. Although the Court rejects Ms. Smith's contention that she has presented a *prima facie* showing of five badges of fraud, the existence of two, a familial relationship between the Debtor and the transferee and the pendency of litigation at the time of the transfer, is not in dispute. Even the presence of just one of the badges may warrant a conclusion that a transfer was fraudulently made. *In re Sandoval*, 153 F.3d 722, at *2. Where a creditor has established a *prima facie* case, causing the burden to shift to the debtor to provide a satisfactory explanation for his actions, *Farouki*, 14 F.3d at 249; *Tavenner v. Smoot*, 257 F.3d at 408, a court must consider the defendant's explanation of the facts and circumstances surrounding the transfer. In this case, the Court has considered the facts

9

and circumstances of the Debtor's transfer of the Property to his sister while the State Court Lawsuit was pending.

The transfer of the Property took place approximately two months before the jury returned a verdict against the Debtor, at a time when the Debtor was incurring legal fees due to the State Court Lawsuit and was further burdened with monthly mortgage payments associated with the Property. He was also experiencing additional financial difficulties related to his separation from Melissa Bowen. He had been attempting to sell a portion of the Property with the assistance of a realtor for years in order to generate needed cash and, in an extremely depressed market, had been unsuccessful. His sister presented the Debtor with an opportunity to sell the Property for a price sufficient to pay off the liens and leave the Debtor with additional funds to pay bills. There was no effort to conceal the existence of the transfer, either before or after the bankruptcy filing.

These circumstances, along with the evidence offered by the Debtor, support the conclusion that the Property was sold for as high a price as the Debtor could generate on the open market. The testimony of the Debtor, his sister and his realtor corroborating the Debtor's legitimate intentions was not rebutted. Based on the evidence before it, the Court finds that the Debtor sold the Property to pay debts rather than to hinder, delay or defraud Ms. Smith. Accordingly, the Court finds that the Debtor has provided a

satisfactory explanation of why he sold the Property to his sister at the time he did and for the price he obtained. [10]

---

[10] In this case, there also exists an unusual circumstance in that another court has already examined the transfer of the Property and found that the price paid by Eileen Bowen was "comparable to what might have been received by a stranger in an arm's length transaction under similar circumstances . . . ." *Smith v. Bowen (In re Bowen)*, 498 B.R. 584, 590 (Bankr. W.D. Va. 2013). On March 15, 2012, two days before the Debtor's bankruptcy filing, Melissa Bowen filed a Chapter 7 petition in the U.S. Bankruptcy Court for the Western District of Virginia, Lynchburg Division, Case No. 12-60622. Approximately six months later, Ms. Smith filed an adversary proceeding (*Smith v. Bowen (In re Bowen)*, 498 B.R. 584, (Bankr. W.D. Va. 2013)) seeking to bar Melissa Bowen's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) alleging, as in the present case, that Melissa Bowen transferred her interest in the Property within one year of her bankruptcy filing with the intent to hinder, delay or defraud Ms. Smith. Judge Connelly issued a memorandum opinion and separate related order denying the relief requested by Ms. Smith and concluding that Melissa Bowen did not have the actual intent to hinder, delay or defraud Ms. Smith. Among her findings of fact was a determination that the sale of the Property "appear[ed] to be fairly consistent with what would be expected from an arm's length transaction under similar circumstances." 498 B.R. at 590. Ms. Smith did not appeal this decision.

Had Judge Connelly's prior decision been known to Debtor's counsel prior to the trial, it would be reasonable to think that the Court might have been called upon to determine whether the doctrine of collateral estoppel, also known as "issue preclusion," would have precluded the Plaintiff from relitigating whether there was a lack of consideration paid for the Property. Despite the various issues that may be involved in determining whether all of the required elements of collateral estoppel have been met (*see Taylor v. Sturgell*, 553 U.S. 880 (2008); *Harper v. Knight (In re Knight)*, Adv. Pro No. 02-06838-DOT, 2004 WL 3186390, at *2 (Bankr. E.D. Va. Dec. 15, 2004)), the failure of the Debtor to raise these issues renders them moot. The Court stresses that it has made its findings in this adversary proceeding without reliance on Judge Connelly's determinations but strictly on the basis of the evidence presented at trial.

The Court discovered Judge Connelly's memorandum opinion independently, as it was not cited by either counsel during the trial or in any memoranda. The Court is troubled by the failure of Ms. Smith's counsel to disclose the existence of Judge Connelly's decision, which the Court must conclude was an intentional omission given that Ms. Smith was represented by the same attorneys in both adversary proceedings. Rule 2090-1(I) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia adopts the Virginia Rules of Professional Conduct as the ethical standards relating to the practice of law in this Court. *Virginia Rules of Professional Conduct*, Va. Sup. Ct. R. Pt. 6, § II, 3.3(a)(3) provides that "[a] lawyer shall not knowingly fail to disclose to the tribunal controlling legal authority in the subject jurisdiction known to the lawyer to be adverse to the position of the client and not disclosed by opposing counsel; . . . " The Court must also assume that the failure of Debtor's counsel, who was apparently not involved in the adversary proceeding involving Melissa Bowen, to bring Judge Connelly's memorandum opinion to the attention of this Court was due to his being unaware of its existence. Notwithstanding any suggestion that Judge Connelly's findings may not be "controlling legal authority in the subject jurisdiction" or may not amount to dispositive adverse authority under applicable standards involving collateral estoppel, counsel's failure to disclose Judge Connelly's adverse ruling is, at best, disingenuous. In an American Bar Association (ABA)

11

As pointed out by the Fourth Circuit in *Farouki*, "[a]lthough the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor." 14 F.3d at 249. Ms. Smith has failed to carry her burden of proving by a preponderance of the evidence that the Debtor transferred the Property with the actual intent to hinder, delay or defraud her. Therefore, her request to deny the Debtor's discharge will be denied. A separate order will be issued simultaneously with the issuance of this Memorandum Opinion.

Signed: February 23, 2015

/s/ Keith L. Phillips
United States Bankruptcy Judge

Entered on Docket: February 24, 2015

---

1949 formal opinion, which discussed a 1908 predecessor rule to Model Rule 3 of the Model Rules of Professional Conduct, the following test was enunciated:
> Is the decision which opposing counsel has overlooked one which the court should clearly consider in deciding the case? Would a reasonable judge properly feel that a lawyer who advanced, as the law, a proposition adverse to the undisclosed decision, was lacking in candor and fairness to him? Might the judge consider himself misled by an implied representation that the lawyer knew of no adverse authority?

ABA Comm. on Prof'l Ethics & Grievances, Formal Op. 280 (1949). Under Model Rule 3.3, counsel has a duty not only to cite adverse authority but also must bring to the attention of the deciding court another court's ruling against the lawyer's client on the same issue. *See Borowski v. DePuy, Inc.*, 850 F.2d 297, 304-05 (7th Cir. 1988) (noting that Counsel's "ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist [is] precisely the type of behavior that would justify imposing . . . sanctions.") (internal citation omitted); *Matthews v. Kindred Healthcare, Inc*. No. 05-1091-T-AN, 2005 WL 3542561, at *4-5 (W.D. Tenn. Dec. 17, 2005) (citing the Tennessee version of Model Rule 3.3 to address parties who failed to disclose prior adverse rulings). Judge Connelly's decision, in particular her finding concerning the adequacy of consideration for the transfer of the Property, amounts to a ruling against Ms. Smith on a key issue in this case and is therefore appropriate for this Court to consider, even if it may not necessarily control the ultimate disposition of this case. *See also Tyler v. State*, 47 P.3d 1095, 1104-05 (Alaska Ct. App. 2001) (discussing ABA Formal Op. 280).

12

Copies:

Tiffany D. Smith
5486 Mechanicsville Turnpike
Mechanicsville, VA 23111

Donald R. Morin
Morin & Barkley LLP
455 Second Street, S.E., Suite 200
Charlottesville, VA 22902

Charles William Bowen
6005 Crescent Point Drive
Orange, VA 22960

Ross Charles Allen
Smith and Wells
1330 Alverser Plaza
Midlothian, VA 23113

Judy A. Robbins, 11
Office of the U.S. Trustee - Region 4 -R
701 E. Broad Street, Suite 4304
Richmond, VA 23219

Roy M. Terry, Jr.
Sands Anderson PC
P.O. Box 2188
Richmond, VA 23218-2188

Elizabeth L. Gunn
John C. Smith
Sands Anderson PC
1111 East Main Street, 24th Floor
P.O. Box 1998
Richmond VA 23218-1998